**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

HAOZHAN REN

*Petitioner*,

v.

JOHN T. TSOUKARIS *et al.*


*Respondents*.

Civil Action No. 26-cv-00767

**OPINION**

June 4, 2026

**THIS MATTER** comes before the Court upon the Petition for a Writ of Habeas Corpus ("Petition") filed by Petitioner Haozhan Ren ("Petitioner") pursuant to 28 U.S.C. § 2241, challenging the legality of his continued civil immigration detention. (ECF No. 1.) The Court has considered the adequacy of the bond proceedings conducted pursuant to this Court's prior Orders (ECF Nos. 4, 8, 11), and Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction concerning the constitutionality of his continued confinement (ECF No. 14).

## I.    BACKGROUND AND PROCEDURAL HISTORY

On January 28, 2026, the Court granted the Petition in part and concluded that Petitioner's detention is governed by § 1226(a), not § 1225(b)(2). (ECF No. 4.) The Court ordered Respondents to provide Petitioner with an individualized bond hearing before an immigration judge no later than February 4, 2026, and further directed Respondents to file notice regarding the outcome of that hearing. (*Id.*)

Respondents thereafter advised the Court that Petitioner appeared before an immigration

judge on February 4, 2026, and that bond was denied.  (ECF No. 6.)  By letter dated February 6, 2026, Petitioner asserted that the proceeding did not comport with the requirements of a fair bond hearing and requested a new hearing in which the Government would bear the burden of proving, by clear and convincing evidence, that Petitioner posed either a danger to the community or a flight risk.  (ECF No. 7.)

By Text Order entered February 8, 2026, the Court determined that Respondents failed to comply with the Court's prior order requiring a bond hearing under § 1226(a).  (ECF No. 8.)  Specifically, the Court concluded that the February 4, 2026 hearing conducted pursuant to 8 C.F.R. § 1236 was insufficient and directed Respondents to provide Petitioner with a new § 1226(a) bond hearing in which Respondents would bear the burden of establishing flight risk or dangerousness. (*Id.*)

Respondents subsequently informed the Court that Petitioner again appeared before an immigration judge on February 11, 2026.  (ECF No. 9.)  According to Respondents, the immigration judge concluded that the February 4, 2026 custody redetermination hearing already satisfied this Court's directive and therefore declined to conduct a new hearing, instead advising Petitioner to pursue relief before the Board of Immigration Appeals. [1]  (*Id.*)  Petitioner responded

---

[1] Respondents contend that the February 5, 2026 hearing was conducted pursuant to 8 U.S.C. § 1226(a).  (ECF No. 12 at 1; ECF No. 10 at 1–2.)  The written order issued by Immigration Judge Maria Akalski ("Judge Akalski") states that Petitioner "requested a custody redetermination pursuant to 8 C.F.R. § 1236" and denies relief because he "is a flight risk."  (ECF No. 6-1 at 2.)

A custody redetermination under 8 C.F.R. § 1236 is the regulatory mechanism implementing § 1226(a).  The Court's concern is whether the hearing meaningfully implemented the individualized assessment required by the Court's January 28, 2026 Order.  Under the Board's articulation of flight-risk analysis, bond determinations must reflect reasoned consideration of relevant factors, including family ties, length of residence, employment history, criminal record, and prior compliance with immigration proceedings. *See Matter of R-A-V-P-*, 27 I&N Dec. 803 (BIA 2020).  The conclusory denial issued here—resting on a generalized statement that Petitioner failed to meet his burden—does not permit the Court to determine whether such individualized analysis

2

by letter dated February 12, 2026, asserting that "there was no bond hearing, no evaluation of discretionary authority under § 1226(a), and no burden of proof placed upon the Respondents to demonstrate Petitioner's flight risk or danger to the community." (ECF No. 10 at 1.)

In light of these submissions, the Court entered a Text Order on February 18, 2026 directing Respondents to submit briefing and supporting documentation concerning the February 11 bond proceeding so that the Court could determine whether the hearing comported with due process and fundamental fairness. (ECF No. 11.) Respondents thereafter submitted briefing together with transcripts from the February 4 and February 11 proceedings. (ECF No. 12, Exs. A–B.) Petitioner filed a reply. (ECF No. 13.)

Petitioner thereafter filed a Motion for Temporary Restraining Order and Preliminary Injunction. (ECF No. 14.) The Court ordered Respondents to file a brief in opposition. (ECF No. 15.) On June 2, 2026, Respondents filed responsive briefing. (ECF No. 16.)

## II.    **LEGAL STANDARD**

The Court's review is limited. Under 8 U.S.C. § 1226(e), federal courts lack jurisdiction to reweigh an immigration judge's discretionary determinations concerning dangerousness or flight risk. The Court may, however, review whether the procedures employed comported with due process and with this Court's prior habeas directives. *See Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022).

The Third Circuit has recognized that a fundamentally fair immigration bond hearing

---

occurred.

The Court therefore directed that a new hearing be conducted expressly under § 1226(a), with the burden of proof upon Respondents, and in conformity with ECF No. 8—not to reweigh the evidence or disturb Judge Akalski's discretion, but to ensure a procedurally adequate, reasoned custody determination susceptible to meaningful judicial review.

requires that a noncitizen "(1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his interests." *Id*.

The Third Circuit has also recognized that civil immigration detention remains subject to the protections of the Due Process Clause and that detainees may not be subjected to punitive conditions of confinement or deliberate indifference to serious medical needs. *See E. D. v. Sharkey*, 928 F.3d 299, 306–07 (3d Cir. 2019); *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 329–30 (3d Cir. 2020).

Although there is no bright-line rule governing when immigration detention becomes constitutionally unreasonable, the Third Circuit has repeatedly emphasized that due process concerns intensify as detention grows prolonged. *See German Santos v. Warden Pike Cnty. Correctional Facility*, 965 F.3d 203, 210–11 (3d Cir. 2020) (identifying four nonexclusive factors relevant to whether immigration detention has become constitutionally unreasonable – the duration of detention, whether detention is likely to continue, the reasons for delay, and whether the conditions of confinement are meaningfully different from criminal punishment – while emphasizing that the inquiry is "highly fact-specific" and that no bright-line temporal rule governs); *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015).

III.   **DISCUSSION**

   a.  **February 11, 2026 Bond Proceeding**

The transcript from the February 11, 2026 proceeding reflects that the immigration judge declined to conduct a new substantive custody determination notwithstanding this Court's February 8, 2026 Order expressly directing that Petitioner receive a new bond hearing under § 1226(a) with the burden placed upon Respondents.  (ECF No. 9.)  Rather than reopening the

evidentiary record or applying the burden framework ordered by this Court, the immigration judge concluded that the prior February 4, 2026 proceeding already satisfied the Court's directive and reaffirmed the earlier bond denial. (*Id.*)

The February 11 order of the immigration judge elides a critical distinction: the February 4 and February 11 hearings were not merely routine regulatory proceedings. They were hearings conducted pursuant to an Article III court's habeas order, issued after judicial review of Petitioner's detention under 28 U.S.C. § 2241.

Respondents have now had two opportunities to provide a hearing consistent with § 1226(a), this Court's unambiguous Text Orders, and governing Third Circuit precedent but have failed to do so. These circumstances raise substantial concerns as to whether Petitioner received the fundamentally fair hearing required under *Ghanem*. Continued detention in the face of noncompliance with explicit judicial directives supports the ongoing deprivation of liberty without constitutionally sufficient process. *See Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 232 (3d Cir. 2011) (recognizing that immigration detention is constitutionally permissible only so long as it is accompanied by adequate procedural safeguards.)

While remand for a new bond hearing is often appropriate, *see Chavez-Alvarez*, 783 F.3d at 478, the Court concludes that further remand would be futile under these circumstances. The writ of habeas corpus is not an empty formality; it is a substantive safeguard against unlawful executive restraint. *See Zadvydas v. Davis*, 533 U.S. 678, 687-88 (describing habeas as a core protection against arbitrary detention). Pursuant to the Court's authority under the All-Writs Act, 28 U.S.C. § 1651(a) and its habeas jurisdiction under § 2241, the Court must ensure that its judgements are effective and not rendered illusory by noncompliance.

### b.  Petitioner's Mental Health and Conditions of Confinement

In support of his motion for injunctive relief, Petitioner alleges that his mental health significantly deteriorated while in immigration custody and that detention facility staff notified counsel's office on or about March 31, 2026 that Petitioner "was not doing well and appeared to be experiencing mental-health-related symptoms." (ECF No. 14-1 at 3.)  Petitioner further alleges that counsel encountered substantial difficulty obtaining his medical records despite repeated telephone calls and written requests directed to the detention facility.  (*Id.* at 3–4.)

According to the motion papers, Petitioner repeatedly engaged in acts of self-harm between April 22 and April 23, 2026 by intentionally striking his head against the wall while detained, resulting in multiple emergency hospital transports, psychiatric evaluations, and questioning concerning suicidal ideation.  (*Id*. at 4–5.)  The submitted medical records indicate that Petitioner suffered from worsening depression, poor sleep, poor appetite, and suicidal thoughts with a plan "to not eat or bang his head," and further conclude that Petitioner would benefit from psychiatric hospitalization.  (*Id.* at 5; ECF No. 14-3 at 134.)

Petitioner additionally represents that on May 7, 2026, the Superior Court of New Jersey, Law Division, Union County, entered a civil commitment order continuing Petitioner's involuntary psychiatric commitment and scheduling further proceedings.  (ECF No. 14-1; ECF No. 14-3 at 143.)  Despite those ongoing civil commitment proceedings, Petitioner alleges that he was transferred back to Delaney Hall Detention Facility on or about May 15, 2026 and now contends that continued immigration detention itself is precipitating his psychiatric deterioration and self-harm.  (ECF No. 14-1 at 5.)

Respondents argue that Petitioner's medical-care claims fall outside the scope of habeas jurisdiction under *Hope v. Warden York Cnty. Prison*, 972 F.3d 310 (3d Cir. 2020), which limits § 2241 relief to extraordinary circumstances where release is the only adequate remedy.  (ECF No.

16 at 6–8.)  They contend *Hope* was confined to the exigencies of the COVID-19 pandemic and does not extend to "garden variety" disputes over the adequacy of medical treatment in custody. (*Id.* at 6–7.)  In Respondents' view, because Petitioner is receiving ongoing psychiatric care, including medication and clinical monitoring, his allegations reflect disagreement with the level of treatment rather than a constitutional deprivation, and therefore cannot satisfy *Hope*'s requirement that release be the sole effective remedy.  (*Id.* at 7–8.)

Petitioner's allegations nonetheless raise substantial constitutional concerns.  Respondents characterize this matter as a routine dispute regarding the adequacy of medical treatment and argue that *Hope* does not authorize habeas relief under such circumstances.  The Court agrees that not every claim involving medical care in detention is cognizable under § 2241.  Nor does the Court find it necessary, at this juncture, to determine whether Respondents' conduct rises to the level of deliberate indifference under *Hope*.

Respondents' argument, however, misses the broader constitutional inquiry presented here. The issue before the Court is not simply whether Petitioner has received some measure of psychiatric treatment while detained.  Rather, the Court must assess whether continued civil immigration detention remains constitutionally permissible under the totality of the circumstances. *See German Santos*, 965 F.3d at 211–14; *Diop*, 656 F.3d at 234.

Even accepting Respondents' representations that Petitioner has received psychiatric medication, clinical monitoring, and hospitalization, the undisputed record reflects that Petitioner experienced repeated acts of self-harm, suicidal ideation, emergency psychiatric intervention, and involuntary civil commitment proceedings while in immigration custody.  Those events are significant not because they independently establish a freestanding medical-care claim warranting habeas relief, but because they bear directly on the constitutional reasonableness of continued

7

detention.  *See Hope*, 972 F.3d at 329–30; *E. D.*, 928 F.3d at 306–07.

Moreover, Petitioner's psychiatric deterioration does not exist in isolation.  It occurred while Petitioner remained detained following Respondents' failure to provide the procedurally adequate bond hearing ordered by this Court.  Thus, the evidence concerning Petitioner's mental-health crisis raises grave constitutional concerns because Petitioner alleges that detention itself is precipitating the very psychiatric deterioration that necessitated emergency intervention.  When considered together with the procedural deficiencies surrounding Petitioner's bond proceedings and the continued deprivation of liberty that followed, the psychiatric evidence strongly supports the conclusion that Petitioner's detention has become constitutionally unreasonable under the totality of the circumstances.  *See German Santos*, 965 F.3d at 211–14; *Diop*, 656 F.3d at 234.

### c.  Constitutional Reasonableness of Continued Detention

The Court also notes that Petitioner has remained in immigration custody since approximately January 21, 2026.  (ECF No. 1 ¶ 45.)  Although the duration of detention alone does not establish a due process violation, the Third Circuit has repeatedly emphasized that constitutional concerns intensify as civil immigration detention becomes prolonged, particularly where detention ceases to bear a reasonable relationship to its purported regulatory purpose.  *See Diop*, 656 F.3d at 234 (holding that immigration detention becomes constitutionally suspect when it is unreasonably prolonged in relation to its regulatory justification); *Chavez-Alvarez*, 783 F.3d at 478 (recognizing that due process requires greater procedural protection as detention grows extended); *German Santos*, 965 F.3d at 211–14 (directing courts to evaluate the totality of the circumstances, including the duration of detention, likelihood of continued detention, reasons for delay, and conditions of confinement).

Here, the constitutional concerns arising from the length of detention do not exist in

isolation. Rather, they are compounded by the procedural deficiencies surrounding Petitioner's bond proceedings and by the extraordinary evidence of psychiatric deterioration occurring during confinement.

Under these circumstances, continued detention no longer serves the limited regulatory purposes permissible in the civil immigration context and instead assumes a constitutionally punitive character. *See Hope*, 972 F.3d at 329–30 (recognizing that civil immigration detention may violate due process where conditions of confinement pose unreasonable risks to detainees' health and safety); *E. D.*, 928 F.3d at 306–07 (holding that civil detainees may not be subjected to punitive conditions of confinement). Thus, the Court concludes that Petitioner's continued detention has become constitutionally unreasonable and incompatible with the requirements of due process.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the Petition (ECF No. 1) is **GRANTED**. An appropriate Order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**
